USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/9/09

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------x

ALBERTO MARTE,

                      Petitioner,

        – against –

THOMAS RICKS, Superintendent,
Upstate Correctional Facility,

                      Respondent.

------------------------------------------------x

02 Civ. 3895 (TPG)

**OPINION**

Petitioner Alberto Marte brings this habeas petition under 28 U.S.C. § 2254 to challenge his conviction and sentence for drug possession in the Supreme Court of New York County. Respondent has answered, opposing the petition.

The petition is denied.

## Background

### Facts Presented at Trial

The following facts were presented at trial. On July 7, 1997, police officers Luis Despaigne, Richard Huwitt, and Kevin Ryan, all members of the Street Crime Unit of the New York Police Department, were driving in an unmarked car in lower Manhattan. Despaigne observed a man, later determined to be Marte, exiting a double-parked car while holding an object, which Despaigne thought might be a firearm. Despaigne stopped

the police car near Marte, who then looked in the officers' direction for about three seconds. His face was well lit by both a nearby street lamp and the headlights of the officers' vehicle. Marte then tossed the object to the ground and fled. Huwitt and Ryan pursued Marte. Despaigne paused to retrieve the discarded object, which he discovered was a bag containing heroin, and then joined in the pursuit.

The officers were close to Marte and never lost sight of him during the pursuit. Ultimately, however, Marte entered a building and locked out the officers, ending the pursuit. Before he closed the building's door, however, Marte turned to face the officers for two to three seconds. Marte was visible through a transparent fiberglass panel in the door and was well illuminated by the building's lights.

On July 8, Despaigne and Huwitt saw the car that they had seen Marte exit the night before. They stopped the car, which was being driven by its owner, Illiana Mendez. Mendez informed the officers that her ex-boyfriend, Raymond Acevedo, had a key to the car. On July 9, several police officers, including Despaigne, Ryan, and Huwitt, went to Acevedo's workplace to arrest him. When Acevedo appeared, however, they realized that he was not the man they had seen on July 7.

Officer Scott Prendergast was assigned to determine the identity of the man that his colleagues had pursued. On July 9, Prendergast showed Despaigne and Ryan several photographs. Despaigne identified a man in one photograph as the man he had seen on July 7; Prendergast

knew the man as "Berto." Prendergast separately showed the photograph to Ryan, who also identified Berto as the man who had discarded the heroin on July 7. Following that meeting, Prendergast started looking for Berto.

On July 27, Prendergast observed a car idling and blocking a lane of traffic, as well as Marte standing at a nearby public telephone. Prendergast approached Marte and asked him if he knew who owned the car that was blocking traffic. Marte initially replied that he did not know who owned the car, but then informed Prendergast that the car belonged to Marte's girlfriend. When Prendergast asked him to identify himself, he identified himself as Alberto Marte. Prendergast informed Marte that he would need to accompany him to the police station.

After taking Marte to the police station, Prendergast called Despaigne and asked him to come to the station as well. Upon arriving, Despaigne identified Marte as the man he had seen and chased on July 7, pointing to Marte and saying, "That's the guy. You got him."

The Trial

Before trial, Marte unsuccessfully challenged the methods used by Prendergrast to identify him, arguing that the use of the photographs and the in-person "show-up" identification by Despaigne were improperly suggestive. In denying a pre-trial motion to suppress, Judge Mikki Scherer held that the group photograph from which Despaigne first

identified Marte was not suggestive, and that Despaigne's later identification of Marte at the police station was merely confirmatory.

Marte presented no evidence at the trial. In his closing argument, defense counsel primarily argued that there was reasonable doubt regarding the police officers' identification of Marte and that the police officers were not credible witnesses.

Marte was convicted by the jury of one count of criminal possession of a controlled substance in the second degree. On May 5, 1998, Marte was sentenced as a second-felony offender to an indeterminate prison term of nine years to life. According to information on the website of the New York State Department of Correctional Services, Marte was paroled and released from prison on July 24, 2006.

The Direct Appeal

Marte appealed his conviction on four grounds: (1) the show-up identification at the precinct was unduly suggestive; (2) the trial court should have excluded "negative identification" testimony by officers stating that Acevedo was not the perpetrator; (3) testimony about Prendergast's initial conversations with his colleagues was hearsay and improperly implied that Marte was a suspect and a known criminal; and (4) Marte had received ineffective assistance of counsel.

On March 15, 2001, the Appellate Division affirmed Marte's conviction, holding that Marte had "received meaningful representation" and rejecting his other claims because they were not preserved. People

v. Marte, 281 A.D.2d 240 (1st Dep't 2001) ("Marte I"). Although the court declined to review the unpreserved claims, it noted that even if it had reviewed them, it would have held that

> the precinct identification was confirmatory since two days after the incident the police officer independently identified defendant from a series of photographs; that the negative identification evidence was relevant to issues raised at trial; and that the evidence challenged as hearsay was not offered for its truth and was properly admitted as part of the narrative leading to defendant's arrest, which was necessary to prevent speculation by the jury.

Id. (citations omitted).

In a letter dated March 22, 2001, Marte requested leave to appeal to the New York Court of Appeals in order to seek review of the four claims raised on direct appeal. On May 14, 2001, the application for leave to appeal was denied. People v. Marte, 96 N.Y.2d 831 (2001) ("Marte II").

The Motion to Vacate the Judgment

On March 4, 2002, Marte, appearing pro se, filed a motion to vacate the conviction pursuant to New York Criminal Procedure Law § 440.10. Marte's motion raised five claims: (1) trial counsel had failed to provide effective assistance of counsel because he did not investigate Marte's arrest and because he failed to ask the court to produce his alibi witness; (2) Marte's arrest was a result of biased racial profiling; (3) the arresting officers lacked probable cause to make the arrest; (4) the trial

court had pressured the jury into reaching a verdict; and (5) the prosecutor had intimidated and harassed defense witnesses.

On April 9, 2002, the motion was denied as both procedurally improper and "wholly without merit." People v. Marte, Indictment No. 6325-97 (N.Y. Sup. Ct. 2002) (order denying vacatur of the judgment) ("Marte III"). On May 8, 2002, Marte sought leave to appeal this denial. On June 20, 2002, the Appellate Division denied leave to appeal. People v. Marte, 2002 App. Div. LEXIS 6661 (N.Y. App. Div. 2002) ("Marte IV").

The Application for a Writ of Error Coram Nobis

On March 27, 2002, Marte, appearing pro se, moved for a writ of error coram nobis. Marte's motion argued that he had received ineffective assistance of counsel on his appeal because appellate counsel failed to argue the following points: (1) the prosecution prevented an alibi witness from testifying; (2) trial counsel was ineffective because he did not investigate Marte's arrest and because he failed to ask the court to produce an alibi witness; (3) Marte's arrest was a result of biased racial profiling; (4) the arresting officers lacked probable cause to make the arrest; and (5) the trial court had pressured the jury into reaching a verdict. The Appellate Division denied petitioner's application on July 18, 2002. People v. Marte, 296 A.D.2d 873 (1st Dep't 2002) ("Marte V"). Petitioner then sought leave to appeal, which was denied on June 13, 2003. People v. Marte, 100 N.Y.2d 563 (2003).

- 6 -

The Current Petition

Marte, appearing pro se, timely filed this petition on May 22, 2002. Petitioner claims that (1) the trial court improperly admitted identification and hearsay evidence; (2) the prosecution failed to disclose evidence favorable to petitioner; (3) trial counsel was ineffective; and (4) appellate counsel was ineffective. Although Marte's habeas petition is tersely worded and fails to provide factual details to support his claims, the court has read the petition in conjunction with his state court filings in order to better understand the nature of his arguments.

On January 31, 2003, this court summarily denied the petition on the ground that petitioner's claims failed to raise any valid constitutional issues. Petitioner appealed, and on August 5, 2003, the Second Circuit vacated this court's judgment and remanded the matter so that respondent could file a reply.

Discussion

Failure to Disclose the Arrest of the Alibi Witness

Marte's petition alleges that the prosecution improperly failed to disclose that Marte's alibi witness, Illiana Mendez, had been arrested for tampering with a witness. This claim is without merit.

As an initial matter, the claim is procedurally barred because Marte failed to raise it in his state court motions, and therefore has not exhausted the state court remedies available to him. See 28 U.S.C. § 2254(b)(1). Although Marte referred to the arrest of Mendez in his

- 7 -

motion to vacate the judgment and motion for a writ of error <u>coram nobis</u>, he did not argue in those motions that prosecutors had improperly withheld information about the arrest. Rather, he referred to the arrest in the context of arguments regarding witness intimidation by prosecutors and ineffective assistance of counsel.

Despite Marte's failure to exhaust this claim, however, it may be denied on the merits because it is patently frivolous. <u>See</u> 28 U.S.C. § 2254(b)(2); <u>Davis v. Greene</u>, No. 04-cv-6132, 2008 WL 216912, at *4 (S.D.N.Y. Jan. 22, 2008). For petitioner to succeed in this argument on the merits, he would be required to show that (1) the evidence was suppressed by the state, (2) the evidence would have been favorable to him because it was exculpatory or impeaching, and (3) prejudice ensued. <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999). There is no basis for finding here that the evidence was either favorable to petitioner or that prejudice resulted from the prosecution's failure to disclose it. If anything, information that petitioner's own witness had been arrested would have been unfavorable to his case. This claim is therefore patently frivolous and is denied on the merits.

<u>Improper Admission of Evidence</u>

Marte's petition also claims that two categories of evidence were improperly admitted at trial. First, he challenges the admission of "negative identification" testimony by officers who stated that Acevedo was not the perpetrator. Second, he challenges the admission of

Prendergast's testimony regarding his conversations with other officers about Marte, which was offered to provide context for Marte's eventual arrest. Because these challenges were not raised at trial, the state court held that they were procedurally defaulted. This court therefore cannot consider them, and this claim is denied.

When the state court rendering the most recent reasoned decision in a case explicitly states that its decision rests on a procedural bar under state law, that decision generally forecloses federal habeas review of the defaulted claims. Levine v. Comm'r of Corr. Servs., 44 F.3d 121, 126 (2d Cir. 1995). A federal habeas court can only disregard the procedural default when the petitioner demonstrates that (1) there was cause for the default, and failure to review the claim would cause actual prejudice, or (2) failure to consider the claim will result in a fundamental miscarriage of justice. Washington v. James, 996 F.2d 1442, 1447 (2d Cir. 1993).

Here, Marte's negative identification and hearsay claims are procedurally defaulted. The Appellate Division declined to consider these claims because Marte's trial counsel did not raise sufficient objections at trial. Marte I, 721 N.Y.S.2d at 533. Marte has not asserted in his habeas petition that an exception to the procedural default bar applies here, and there is no indication that he would be able to make such a showing. This claim is therefore denied.

### Ineffective Assistance of Trial Counsel

Marte claims that he was denied effective assistance of counsel at trial because his attorney failed to challenge the admission of (1) Officer Despaigne's show-up identification of Marte at the police station on the ground that it was suggestive, (2) Marte's false denials to the police shortly before his arrest that he knew who owned the car that he had been driving, (3) testimony by Officer Prendergast describing his conversations with other officers prior to Marte's arrest on the ground that it was hearsay, and (4) the "negative identification" testimony by witnesses who stated that Acevedo was not the perpetrator.

This argument was denied on the merits by the state court. Marte I, 281 A.D.2d 240. For this court to grant Marte's petition, the state court's decision must therefore have been "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The relevant federal law was set forth in Strickland v. Washington, in which the Court held that a defendant raising an ineffective-assistance claim must make two showings. 466 U.S. 668, 687 (1984). First, the defendant must establish that his attorney's performance "fell below an objective standard of reasonableness." Id. Second, even if the attorney's performance was unreasonable, the defendant must show "that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

The state court reasonably applied the Strickland standard to the facts of this case. As the Appellate Division noted, admission of all four pieces of evidence was consistent with New York law, and it was therefore reasonable for Marte's attorney not to object. First, Despaigne's show-up identification of Marte was admissible because it was merely confirmatory of the prior photographic identification made by Despaigne and Ryan, and not suggestive. People v. Serrano, 207 A.D.2d 676 (1st Dep't 1994). Second, there was no basis for defense counsel to object to the admission of the statements made by Marte during his arrest. Third, the testimony by Prendergast generically describing his conversations with other officers before Marte's arrest was not hearsay, as it was offered to provide context for Marte's arrest, not to establish the truth of the other officers' statements. Fourth, the "negative identification" testimony was admissible to help the jury assess the reliability of the officers' identification of Marte as the perpetrator. People v. Wilder, 93 N.Y.2d 352, 357-58 (1999). Even if any of this evidence should not have been admitted, Marte has not established that objections by his attorney would have led to Marte's acquittal.

Since Marte has not established that his counsel's performance was unreasonable, the claim of ineffective assistance at trial is denied.

Ineffective Assistance of Appellate Counsel

Marte also claims that he was denied the right to effective assistance of appellate counsel because his counsel declined to challenge Marte's conviction on the grounds that (1) Marte's alibi witness, Illiana Mendez, was prevented from testifying because she was in state custody at the time of the trial, (2) Marte had been arrested because of racial profiling, (3) Marte imposed the burden of proof on him rather than the prosecution, and (4) Marte's trial counsel failed to sufficiently investigate the facts of the case.

This argument was raised in Marte's application for a writ of error coram nobis, which was denied by the Appellate Division. Marte V, 296 A.D.2d at 873. As with Marte's argument that he received ineffective assistance of trial counsel, this court can only grant Marte's petition if the denial of Marte's coram nobis application represented an unreasonable application of federal law. 28 U.S.C. § 2254(d)(1). In evaluating claims that appellate counsel's assistance was ineffective, courts apply the Strickland standard. Smith v. Robbins, 528 U.S. 259, 285 (2000). Thus, Marte must establish that his appellate counsel acted unreasonably, and that there was a reasonable probability that Marte would have achieved a different result on appeal if his counsel had presented the arguments that Marte set forth in his habeas petition. Strickland, 466 U.S. at 687, 694.

Appellate counsel appears to have made a reasonable decision not to raise the arguments that Marte presents. There is no evidence that Mendez could not have been called as a witness by defense counsel even though she was in custody. Rather, as discussed earlier in this opinion, it appears likely that testimony by Mendez could have harmed Marte's case, in light of her arrest. Marte's remaining claims are also untenable. He has presented no evidence that he was subject to racial profiling, that the court shifted the burden of proof, or that his counsel failed to investigate the facts of the case. Indeed, the indications in the record are to the contrary. Marte's appellate counsel appears to have performed effectively, and it is unlikely that Marte would have achieved a different result by raising these arguments on appeal.

## Conclusion

The petition is denied, and the Clerk of the Court is directed to close this case.

Because petitioner has failed to make a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. 28 U.S.C. § 2253; Lozada v. United States, 107 F.3d 1011, 1016-17 (2d Cir. 1997), abrogated on other grounds by United States v. Perez, 129 F.3d 255 (2d Cir. 1997). With respect to the in forma pauperis statute,

the court certifies that any appeal from this order would be frivolous and would not be taken in good faith. 28 U.S.C. § 1915(a)(3).

SO ORDERED.

Dated: New York, New York
March 9, 2009

_____
Thomas P. Griesa
U.S.D.J.